**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-cv-03039-RM

RANDY SALTSGAVER,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]

     Defendant.

---

ORDER

---

    This matter is before the Court on Plaintiff Randy Saltsgaver's ("Plaintiff") request for

judicial review pursuant to 42 U.S.C. § 405(g). (ECF No.1.) Plaintiff challenges the final

decision of Defendant, Commissioner of the Social Security Administration (the

"Commissioner"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For

the reasons set forth below, the Court AFFIRMS the denial of Plaintiff's SSI and DIB

application.

## I.   BACKGROUND

### A.   Relevant Medical Evidence[2]

    Plaintiff was born in 1960. (Tr. 101.) He alleges that he became unable to work on

October 1, 2008, at the age of forty-seven. (*Id.*) The date he was last insured is December 31,

2011. (*Id.* at 135.) Plaintiff claims he became unable to work due to chronic low back pain and

---

[1] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for
Michael J. Astrue as the defendant in this action.
[2] The Court will not discuss impairments or conditions that are not at issue in Plaintiff's opening brief.

numbness in his right arm and thumb.  (*Id.* at 139.)  He has not worked since October, 2008.  (*Id.* at 130-31.)  In the past, Plaintiff had worked as a drywaller, a flagger on road construction, and a welder of heavy equipment.  (*Id.* at 140.)  He has a GED.  (*Id.* at 144.)

The record before the Court indicates that Plaintiff began seeking treatment for back problems as early as 2004.  This history begins on April 13, 2004, when Plaintiff's cervical spine was X-rayed, revealing degenerative changes at C3 and C4, predominantly involving the disc.  (*Id.* at 296.)  X-rays of Plaintiff's thoracic spine taken the same day showed "minimal degenerative disk disease . . . ."  (*Id.* at 297.)

On August 17, 2007, Plaintiff began receiving treatment from Alan Burnside, M.D. for low back pain.  (*Id.* at 207-10.)  During a September 10, 2007 examination, Dr. Burnside noted that Plaintiff was straining his back working as a flagger and that Plaintiff might "need to modify how he is performing his job duties."  (*Id.* at 209.)  Dr. Burnside's examination revealed that Plaintiff's muscles were very tight in the low back; that flexion and extension were done poorly and that most of his tenderness was over the posterior longitudinal ligament at L5.  (*Id.*)  Dr. Burnside assessed Plaintiff as having lower back pain and muscle spasms.  (*Id.*)  Plaintiff was prescribed various pain medications over the course of his treatment with Dr. Burnside.  (*Id.* at 209, 210.)

Plaintiff returned to Dr. Burnside on September 22, 2008, complaining of "profound" fatigue that may have been produced in part by Plaintiff's low back pain.  (*Id.* at 207.)  On October 14, 2008, Plaintiff also began seeing Physician's Assistant Jeff McElwain for treatment of his fatigue, among other things.  (*Id.* at 249-50.)  On November 11, 2008, Dr. Burnside filled out a prescription form stating that Plaintiff was "totally and permanently disabled and not capable of gainful employment."  (*Id.* at 298.)  The following month, on December 9, 2008, Dr.

Burnside filled out a Med-9 form stating his diagnosis that plaintiff suffered from "profound" and "disabling" fatigue, low back pain that was "reasonably well controlled with medications," and "diffuse joint pain." (*Id.* at 275.) Dr. Burnside stated that Plaintiff was disabled for twelve months or longer and that his fatigue would need to resolve or at least lessen before he could return to work. (*Id.*)

Plaintiff fell and injured himself on January 7, 2009 and sought treatment at Southwest Memorial Hospital. (*Id.* at 222-24.) An X-ray of Plaintiff's lumbar spine on the day of the fall showed no significant degenerative changes. (*Id.* at 224.) However, Plaintiff returned to the emergency room of Southwest Memorial Hospital on January 17, 2009 reporting pain radiating to his left leg and seeking medication. (*Id.* at 211-12.) Plaintiff was instructed to see his primary care physician for chronic pain management. (*Id.*) Plaintiff then sought treatment from PA McElwain on January 27, 2009, complaining primarily of back pain. (*Id.* at 244-46.) Following an examination, PA McElwain assessed Plaintiff as having lumbar pain with radiculopathy and prescribed Percocet and Soma. (*Id.* at 246.) On February 26, 2009, PA McElwain assessed Plaintiff as having lumbar disc disease, but noted that Plaintiff's deep tendon reflexes and muscle strength were "essentially normal" in his lower extremities. (*Id.* at 243.)

On May 4, 2009, Plaintiff received a consultative evaluation from Dr. Eugene Toner. (*Id.* at 255-59.) Dr. Toner found that Plaintiff's low back pain was worse with bending and twisting. (*Id.* at 255.) Dr. Toner further noted Plaintiff's report that he spends his day doing some cleaning, vacuuming, some light yard work and going for walks, but spends the remainder of the day lying down. (*Id.*) Dr. Toner noted that Plaintiff could stand for fifteen minutes, sit for thirty minutes, walk one half mile, lift twenty pounds and drive about forty miles. (*Id.*) Dr. Toner opined that Plaintiff had exhibited poor effort throughout much of the examination. (*Id.* at 256.)

Dr. Toner assessed Plaintiff as having low back pain with no evidence of radiculopathy and opined that Plaintiff's complaints were in excess of objective findings.  (*Id.* at 257.)  Dr. Toner recommended that Plaintiff should be doing daily back exercises, avoid lifting more than thirty pounds and avoid frequent or prolonged bending.  (*Id.*)

On May 26, 2009, a non-examining physician, Dr. Anthony LoGalbo, completed a Physical Residual Functional Capacity Assessment based on a review of Plaintiff's medical records though May 2009.  (*Id.* at 262-69.)  Dr. LoGalbo assessed that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, sit about six hours in an eight hour day, stand six hours in an eight hour day, and push or pull within those lifting restrictions.  (*Id.* at 263.)  Dr. LoGalbo further assessed that Plaintiff was limited to occasionally climbing ramps, stairs, ladders, scaffolds, and stooping, but he could frequently balance, kneel, crouch and crawl. (*Id.* at 264.)   Reviewing the X-rays taken of Plaintiff's lumbar spine in January, 2009, Dr. LoGalbo found that the results were negative.  (*Id.* at 263-64.)

Plaintiff continued to see PA McElwain on several other occasions in 2009.  During an examination on September 2, 2009, PA McElwain noted that Plaintiff was having side effects from his pain medications, including nausea.  (*Id.* at 281.)  PA McElwain completed a Med-9 form for Plaintiff on November 11, 2009, diagnosing Plaintiff with degenerative disc disease of the lumbar and cervical spine resulting in chronic pain.  (*Id.* at 288-89.)  PA McElwain opined that Plaintiff would be disabled for twelve months or more and would need pain control, consultation with an orthopedic surgeon and possibly surgery, and physical therapy in order to return to work.  (*Id.*)

Plaintiff was struck while riding a bicycle in March, 2011 and again went to the emergency room at Southwest Memorial Hospital on March 7, 2011.  (*Id.* at 292-93.)  During

that visit, a CT scan was taken of Plaintiff's cervical spine.  (*Id.* at 292.)  Although the CT scan showed that Plaintiff's cervical spine was normally aligned with no fractures, it revealed disc space degeneration at C3 and C4, with narrowing, and disc osteophyte formation that produced "mild bilateral foraminal stenosis." (*Id.* at 292.)

PA McElwain completed a second Med-9 form on Plaintiff's behalf on June 22, 2010, again diagnosing Plaintiff with degenerative disc disease and again stating that Plaintiff's disability was expected to last twelve months or longer.  (*Id.* at 286-87.)  PA McElwain further opined that Plaintiff would need job retraining and ongoing orthopedic care in order to be able to return to work.  (*Id.*)  On June 3, 2011, PA McElwain completed a Medical Source Statement and Physical evaluation diagnosing Plaintiff with degenerative disc disease and also with nerve damage in his "right upper extremety" with neck pain.  (*Id.* at 290-91.)  In support of this diagnosis, PA McElwain listed that Plaintiff's cervical spine imaging had shown disc degeneration and foraminal stenosis.  (*Id.* at 290.)  PA McElwain also stated that Plaintiff's lumbar pain was evidenced by his decreased range of motion.  (*Id.*)  PA McElwain assessed that Plaintiff had various functional limitations such that he could only work up to four hours per day, but he would miss six or more days per month because of varying pain syndrome, to the point where he would not be able to work at times.  (*Id.* at 291.)  PA McElwain also found that Plaintiff's pain would impair his ability to concentrate and focus on work tasks.  (*Id.*)

Subsequent to Plaintiff's June, 2011 hearing before the ALJ and the ALJ's ruling that same month, Plaintiff sought consultation from Dr. Robert Wallach regarding his back issues on November 17, 2011.  (*Id.* at 311-12.)  X-rays were taken of Plaintiff's spine, revealing "mild disc space narrowing" at the L3 and L4 vertebrae and "moderate to severe degenerative changes" at the C3 to C4 vertebrae, with "mild retrolisthesis." (*Id.* at 312.)  Plaintiff returned to see Dr.

Wallach on March 6, 2012, with worsening low back pain after slipping on ice.  (*Id.* at 308.)  Dr. Wallach assessed Plaintiff as having right sciatica, with mild weakness in toe extension and dorsiflexion and recommended an MRI.  (*Id.*)  A March 15, 2012 MRI revealed congenital central canal narrowing, spondylosis, and facet osteoarthritis resulting in mild central canal stenosis at L2-L3, mild to moderate canal stenosis at L3-L4, moderate canals stenosis at L4-L5, mild to moderate bilateral neural foraminal stenosis at these levels and a small focal central disc protrusion at L5-S1.  (*Id.* at 306-07.)

**B.**    **Plaintiff's Testimony at The ALJ Hearing, The ALJ's Decision and Plaintiff's Appeal**

Plaintiff appeared with his attorney before Administrative Law Judge ("ALJ") William Musseman on June 16, 2011.  Plaintiff testified to having intense aching in his lower back and that movement caused sharp pain in his back to travel down his right hip and leg.  (*Id.* at 31-32.)  Bending over and lifting caused back pain as well as walking more than about six blocks.  (*Id.* at 32, 34.)  Sitting for more than thirty minutes also caused Plaintiff's back to ache.  (*Id.* at 34.)

Plaintiff further testified to having neck pain and to having partial numbness in his right arm from his shoulder down to his thumb.  (*Id.* at 35.)  He testified to having limited grip strength in his right hand and that he lacked strength in his right arm.  (*Id.* at 36.)

Plaintiff testified that he had good and bad days, with three or four bad days a week where he was required to take pain pills.  (*Id.* at 32-33.)  Plaintiff testified that these medications caused him to have difficulty concentrating and that they made him feel lethargic and, at times, nauseated.  (*Id.* at 38.)   Plaintiff also testified to having issues with fatigue and insomnia.  (*Id.* at 39-40.)

Applying the five step analysis set forth under 20 C.F.R. § 416.920(a), the ALJ found that

Plaintiff was not disabled from October 1, 2008 through the date of his decision, June 28, 2011. (*Id.* at 13-20.) Plaintiff timely filed a Request for Review with the Appeals Council on August 20, 2011. (*Id.* at 88-90.) On September 24, 2012, the Appeals Council denied Plaintiff's appeal. (*Id.* at 1-7.) Plaintiff appealed that decision by bringing this lawsuit. (ECF No. 1.)

## II.    LEGAL STANDARDS

### A.    Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* (citation omitted). "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citation omitted); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (citation omitted). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (citation omitted). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is

represented by counsel.  *Id.* at 480 (citations omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (holding that "the Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal") (citation omitted).

### B.      Evaluation of Disability

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a "disability" as defined in the Act.  42 U.S.C. § 1382.  The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i), 423(a); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequence for evaluating a disability. *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* at § 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step where the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. § 416.920(a)(4)(v).

## III.   ANALYSIS

Plaintiff claims the following errors were committed by the ALJ: (1) that the ALJ did not properly considered the opinions of Plaintiff's treating medical providers; (2) that the ALJ incorrectly determined Plaintiff's RFC; (3) that the ALJ failed to properly consider Plaintiff's

subjective complaints of pain and fatigue because he improperly assessed Plaintiff's credibility; and (4) that the Appeals Council should have reversed the ALJ's decision based on newly submitted evidence.  As explained below, the Court finds that Plaintiff's arguments lack merit and affirms the Commission's decision.

A.      **The ALJ's Consideration of Plaintiff's Treating Physician and Other Treating Medical Source**

Generally, an ALJ must give greater weight to treating source medical opinions relating to the nature and severity of a claimant's impairments than would be provided to other sources. 20 C.F.R. § 404.1527(c)(2).  On the other hand, an ALJ is bound to consider that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."  SSR 96-2p, 1996 WL 374188, at *2; *see also Marshall v.* Astrue, 315 F.App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(c)(2).

The Tenth Circuit has laid out a "sequential" analysis for analyzing the weight and consideration given to a treating source medical opinion:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable and laboratory diagnostic techniques."  SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted).  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  *Id.*  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even where an ALJ determines that a treating source's opinion is not entitled to controlling weight, this does not mean "that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §

404.1527 and 416.927." *Id.* (quoting SSR, 96-2p, 1996 WL 374188, at *4).   Those

factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted).   The

ALJ is bound to consider the above factors and "give good reasons in the notice of

determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350

F.3d at 1301 (citing 20 C.F.R. § 404.1527(d)(2)) (quotations and brackets omitted);

*Daniell v. Astrue*, 384 Fed.Appx. 798, 801 (10th Cir. 2010).   Should the ALJ reject the

opinion entirely, he must provide "specific, legitimate reasons" for doing so. *Watkins*,

350 F.3d at 1301 (quotations and citations omitted).   Where an ALJ "offer[s] no

explanation for the weight, if any, he gave to the opinion of . . . the treating physician"

the Court "must remand because [it] cannot properly review the ALJ's decision without

these necessary findings." *Armstrong v. Astrue*, 495 Fed.App'x. 891, 893 (10th Cir.

2012); *Watkins*, 350 F.3d at 1301; *Drapeau*, 255 F.3d at 1214-15.

Plaintiff argues that the ALJ did not sufficiently justify his decision to afford no

weight to the opinions of either Dr. Burnside or PA McElwain.   As discussed below, the

Court finds that the weight assigned to these medical opinions by the ALJ was based on

substantial evidence.

### 1.    Dr. Burnside

Plaintiff sought treatment from Dr. Burnside from at least August 17, 2007 to September

22, 2008 relating to Plaintiff's back pain and fatigue, among other things.   (Tr. 207-10.)  Dr.

Burnside evaluated Plaintiff on September 10, 2007, noting that he would "need to modify how he is performing his job duties" based on the low back pain he was experiencing. (Tr. 209.) Dr. Burnside assessed Plaintiff as having low back pain on other occasions as well. (*See* Tr. 207, 208.) On November 11, 2008, Dr. Burnside provided Plaintiff with a prescription form stating his opinion that "Mr. Randy Saltsgaver is totally and permanently disabled and not capable of gainful employment." (Tr. 298.) On December 9, 2008, Dr. Burnside completed a Med-9 form reporting disability based on "profound" and "disabling" fatigue, low back pain that was "reasonably well-controlled with medications" and "diffuse joint pain." (Tr. 275.) In his decision, the ALJ stated that he would give "[n]o weight" to Dr. Burnside's Med-9 form because "no specific limitations were given and no supportive examination records were provided in support of the limitations given." (Tr. 16.) The ALJ did not evaluate Dr. Burnside's prescription form.

Starting with Dr. Burnside's November 11, 2008 prescription form, there is no value in that statement that could reasonably have changed the ALJ's opinion even if he had given specific consideration of it. Indeed, consideration of such a document—a wholly conclusory statement, written on a one-page prescription form buried in the record, that provides absolutely no justification for its conclusion—would not alter the conclusion of any reasonable ALJ. Even if the ALJ's choice not to specifically address this document could be considered error, any such error would be harmless. *Shinseki v. Sanders*, 556 U.S. 396, 408-09 (2009); *St. Anthony v. U.S. Dept. of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002); *Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988) (mere fact of error does not warrant remand if ALJ's determination is otherwise supported by substantial evidence).

As for Dr. Burnside's Med-9, the Court finds that the ALJ's rejection of that document was based on substantial evidence. As the ALJ noted, Dr. Burnside's Med-9 evaluation failed to include any specific functional limitations and also failed to connect its conclusion to any supportive examination records. Both shortcomings are significant, as nothing in the record would tend to corroborate Dr. Burnside's conclusion that Plaintiff's back pain or fatigue would cause him to be disabled. Dr. Burnside's own treatment notes do not lend themselves to an assessment of Plaintiff's condition as being particularly severe. For example, in a September 22, 2008 visit Dr. Burnside noted Plaintiff's complaints of "profound fatigue" and that he was having "a lot of pain in his lower back," yet noted in the "[o]bjective" portion of his assessment only that Plaintiff "[d]oes appear tired but in no distress." (Tr. 207.) Similarly, Dr. Burnside's treatment notes from Plaintiff's visits in 2007 only describe Plaintiff's back as "tender" at worst, (*Id.* at 208), or that his muscles were "very tight," (Tr. 209), and notes that Plaintiff's range of motion was only "mildly limited but functional in all planes." (*Id.* at 210.) Even Dr. Burnside's Med-9 form notes that Plaintiff's back pain is "reasonably well controlled with medication." (*Id.* at 275.)

Furthermore, Dr. Burnside's opinion is inconsistent with other evidence in the record. Imaging studies and examinations showed essentially normal results in Plaintiff's back and neck. (Tr. 218-25, 246, 281-83, 285.) *See* 20 C.F.R. § 404.1527(c)(4) (an opinion's lack of consistency with the record as a whole justifies less weight). As to Plaintiff's complaints of fatigue, there are no medical records showing that Plaintiff sought any further treatment for fatigue following Dr. Burnside's evaluation that this was a disabling impairment. Although it would appear that Plaintiff also sought treatment from PA McElwain for his fatigue around the same time as Dr. Burnside's completion of the Med-9 form, there is no further evidence in the

record showing that Plaintiff sought ongoing treatment for this issue. (*See* Tr. 249-50.) Notably, the Med-9 and Medical Source Statement completed by PA McElwain makes no mention of Plaintiff's fatigue. (*Id.* at 286-91.) Similarly, Plaintiff denied experiencing fatigue at July, 2008 and January, 2009 visits to Southwest Memorial Hospital. (*Id.* at 227, 219.) Similarly, Plaintiff did not report issues of fatigue in his consultative evaluation with Dr. Toner in May, 2009. (*Id.* at 255-58.) Notably, Dr. Burnside's treatment notes state Plaintiff's report that he had experienced fatigue around the same time that he had developed a lung infection that later resolved. (*Id.* at 207.) Because Dr. Burnside's treatment notes do not corroborate his assessment that Plaintiff was disabled, and because substantial evidence in the record would contradict that assessment, the ALJ did not err in dismissing Dr. Burnside's assessment.

## 2.    PA McElwain

As an initial matter, PA McElwain would not be considered an "acceptable medical source." SSR 06-03p, 2006 WL 2329939, at *4. Rather, PA McElwain's evaluation would be classified as one from an " 'other source[]' whose opinion[] can be considered 'to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.'" *Block v. Astrue*, 506 Fed. App'x 764, 770 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *2.) As laid out by the Tenth Circuit in *Frantz v. Astrue*, the same factors for weighing the opinions of acceptable medical sources, *see* (c), "apply . . . to all opinions from medical sources who are not acceptable medical sources. . . ." 509 F.3d 1299, 1302 (10th Cir. 2007) (quotations omitted). But, a non-acceptable medical source is not a proper source for finding a medically determinable impairment. 20 C.F.R. § 404.1513(a); 20 C.F.R. § 404.1508. As with "acceptable" medical sources, the ALJ is required to explain the amount of weight he assigns a particular opinion, "or otherwise ensure that the discussion of the evidence in the

determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Block*, 506 Fed. App'x. at 770 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6).

Here, the ALJ stated that he afforded no weight to PA McElwain's Med-9 evaluations because "it was completed by a non-medical source, no specific limitations were given, and it is not supported by the clinical evidence of record." (Tr. 16.) Similarly, the ALJ rejected the medical source statement completed by PA McElwain because he is a "non-medical source and it is not supported by the clinical records signed by Mr. McElwain." (*Id.*) As with acceptable medical sources, the opinions of other medical sources must be weighed, among other things, by its consistency with the record as a whole and the amount of relevant evidence offered in support of that opinion. 20 C.F.R. § 416.927(c). The ALJ's choice to afford no weight to PA McElwain's opinion was based on substantial evidence: PA McElwain did not offer sufficient medical evidence in support of his conclusions and those conclusions were not consistent with the record as a whole.

Regarding the Med-9, the ALJ rightly pointed out that it contained no specific functional limitations that might flow from Plaintiff's stated disability, but merely listed that Plaintiff suffered from degenerative disc disease in the lumbar and cervical areas and chronic pain. (Tr. 289.) Further, PA McElwain did not provide any supporting medical evidence, or even any discussion, that would tend to support this conclusion. (*Id.*) Although PA McElwain did provide specific functional limitations in the Medical Source Statement, these limitations are not consistent with his own treatment notes. For example, PA McElwain's notes from a January 13, 2010 visit state that Plaintiff's "straight leg is mildly positive on the left" and that his "[d]istal neurovascular status in the lower extremities is normal." (*Id.* at 278.) While PA McElwain's

treatment notes from other visits consistently record Plaintiff's reports of back pain, as with the

January 13, 2010 visit, none describe any significant symptoms or severe functional limitations

originating from Plaintiff's back problems.  (*See id.* at 279-85.)  Similarly, PA McElwain cited to

CT scan results in support of the functional limitations listed in his Medical Source Statement,

(*Id.* at 290), yet Plaintiff's CT scan only revealed "mild bilateral foraminal stenosis" of the

cervical spine.  (*Id.* at 292.)  PA McElwain's opinion was not well-supported by the medical

evidence of record and the Court finds that the ALJ's decision to afford no weight to that opinion

was based on substantial evidence.

**B.     The ALJ's Assessment of Plaintiff's Credibility And Other Factors in**
**        Formulating Plaintiff's RFC**

The ALJ found that Plaintiff had the RFC to perform light work, with occasional

bending, squatting, kneeling and climbing.  (Tr. 14.)  In reaching this conclusion, the ALJ found

that Plaintiff's statements concerning the intensity, persistence and limiting effects of the

symptoms flowing from his alleged impairments were not credible to the extent that they were

inconsistent with the record.  (*Id.* at 17.)  Plaintiff argues that the ALJ did not properly account

for Plaintiff's subjective complaints because he did not properly evaluate Plaintiff's credibility.

A claimant's credibility may be questioned because of inconsistencies between his

testimony and other evidence of record. *See Eggleston v. Bowen* 851 F.2d 1244, 1247 (10th Cir.

1988) (no error where ALJ declined to credit claimant's testimony regarding pain due to

inconsistencies in his testimony and the medical record); *White v. Barnhart*, 287 F.3d 903, 909

(10th Cir. 2001) ("We have emphasized that credibility determinations 'are peculiarly the

province of the finder of fact,' and should not be upset if supported by substantial evidence.")

(citations omitted).  However, "[f]indings as to credibility should be closely and affirmatively

linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988). In evaluating a claimant's pain and determining whether or not those complaints are credible, the ALJ must articulate specific reasons for questioning the claimant's credibility. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220-22 (10th Cir. 2004); *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995); SSR 96-7p, 1996 WL 374186, at *4. When evaluating the credibility of a claimant's statements, the ALJ must consider the following:

> 1.[t]he individual's daily activities; 2.[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4.[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5.[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6.[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7.[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3; 20 C.F.R. § 404.1529(c)(3).

The Court finds that the ALJ followed a legally sufficient process in determining the credibility of Plaintiff's alleged symptoms that was based on substantial evidence. Specifically, the ALJ listed several factual inconsistencies between Plaintiff's medical records and Plaintiff's testimony that caused him to discredit Plaintiff's complaints of pain and other symptoms. The ALJ pointed out that Plaintiff testified to having limited use of his right upper extremity, (Tr. 35-36), yet stated during his interview with Dr. Toner that his shoulder had spontaneously healed several years ago and that he currently had no significant issues with it. (*Id.* at 255.) The ALJ also pointed out that Plaintiff had testified to having a number of side effects from his pain medications, (*id.* at 38 – 39), yet the record lacks significant instances where Plaintiff reported these symptoms to his doctors. (*See id.* at 281.) The ALJ also noted that Plaintiff testified that he

17

would lay down frequently throughout the day to relieve the pressure on his back, (*id.* at 37), yet the ALJ found that the evidence of record regarding Plaintiff's back issues were sparse at best and showed at most that Plaintiff suffered only mild problems with his back and neck.

The ALJ also provided additional valid support for his credibility finding by considering Plaintiff's daily activities as described in Plaintiff's testimony and his self-report to medical examiners. Specifically, the ALJ noted Plaintiff's ability to "care for his own needs, care for his pet, prepare meals, perform household chores, shop, drive, and walk for at least two blocks." (*Id.* at 18.) The record further indicates that Plaintiff rode a bicycle and went fishing and hunting. (Tr. 162, 276, 292-93, 300-03.) By articulating the factual basis upon which the ALJ made his credibility determination, the ALJ's credibility finding was closely and affirmatively linked to substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Plaintiff further argues that the ALJ failed to give consideration to Plaintiff's alleged non-severe impairments when calculating his RFC. Specifically, Plaintiff argues that the ALJ failed to discuss or consider the following: Plaintiff's complaints of fatigue; Plaintiff's problems with concentration; Plaintiff's cervical pain and upper extremity symptoms; Plaintiff's side effects from his medications; and Plaintiff's issues with sitting and standing. Plaintiff is mistaken. As discussed above, the ALJ found that Plaintiff's complaints of side effects from his pain medications were not well supported by the record. (Tr. 17.) Regarding Plaintiff's difficulties with concentration, Plaintiff only mentioned this issue at the time of his hearing before the ALJ. (*Id.* at 38-39.) Still, the ALJ did capture this issue in his discussion of Plaintiff's side effects from his medications. (*Id.* at 17.) As stated, the ALJ found that the record does not establish that Plaintiff's side effects were of the magnitude that Plaintiff alleges. (*Id.*) Regarding Plaintiff's upper extremities, the ALJ found Plaintiff's reports of problems with his upper

extremities to be inconsistent with his statements to Dr. Toner that he was not currently experiencing any significant problems with his shoulder. (*Id.*) As for Plaintiff's cervical pain, the ALJ specifically stated that the record supports only mild findings at most. (*Id.*) As for Plaintiff's reports of fatigue, as discussed above, Dr. Burnside's findings were not supported by his own treatment notes, and the record is devoid of any records indicating that Plaintiff received further treatment for his fatigue following Dr. Burnside's December, 2008 Med-9 evaluation.

Regarding Plaintiff's argument that the ALJ did not specifically address Plaintiff's sitting and standing limitations, it is true that the ALJ's RFC analysis is supposed to include a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. This function-by-function assessment requires the ALJ to address, *inter alia*, "an individual's limitations and restrictions of physical strength and define [] the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *5. However, where, as here, there is a dearth of medical evidence on record indicating that Plaintiff would have limitations with sitting or standing, the ALJ's failure to specifically determine Plaintiff's capacity for sitting and standing is without legal significance. *See Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (ALJ's failure to provide function-by-function discussion did not require remand where the ALJ gave sufficient consideration and explanation for RFC determination based on claimant's alleged impairments); *Jimison ex rel. Sims v. Colvin*, 513 Fed.Appx. 789, 792-93 (10th Cir. 2013) (ALJ failure to discuss specific functional limitations relating to claimant's inability to lift not reversible error because there were no findings in the medical record that would indicate such limitation actually existed). While PA McElwain did provide sitting and standing limitations in his Medical Source Statement, (Tr.

290), as discussed above, the ALJ afforded no weight to PA McElwain's analysis because it was not supported by the clinical evidence of record, among other reasons.  (*Id.* at 16.)  To the extent the ALJ committed error by failing to assign specific functional limitations to Plaintiff's ability to sit or stand, any such error would be harmless as there are no significant medical records establishing any such functional limitations.

In making his RFC determination, the ALJ explicitly stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."  (*Id.* at 14.)  *See Flaherty*, 515 F.3d at 1071 (a reviewing court should take "the lower tribunal at its word when it declares that it has considered a matter"); *Eggleston*, 851 F.2d at 1247 (where ALJ's report "addresses" the claimant's various impairments, this was sufficient to infer that the ALJ had properly considered their combined effects without other indications to the contrary).  The ALJ then went further and gave individual attention to each of Plaintiff's alleged maladies in formulating Plaintiff's RFC and also articulated specific reasons for discounting Plaintiff's report of the severity of his symptoms.  As such, the ALJ's calculation of Plaintiff's RFC was based on substantial evidence.

### C.      The Appeals Council and ALJ's Consideration of Plaintiff's Newly Submitted Evidence

Plaintiff argues that newly submitted evidence—cervical X-rays taken in November, 2011 and an MRI of the lumbar spine taken in March, 2012—would have caused the ALJ to reach a different conclusion and so it was error for the Appeals Council to decline to reverse the ALJ's decision based on this new evidence.  Specifically, the Appeals Council found that because the ALJ decided Plaintiff's case through June 28, 2011, these later created records are about a "later time" and would thus "not affect the decision about whether [Plaintiff was]

disabled beginning on or before June 28, 2011." (Tr. 2.)  Plaintiff asserts that this additional evidence should relate back to the period before the ALJ's decision "because it supports [Plaintiff's] longstanding complaints of neck and back pain." (ECF No. 13 at 19.)  The Court disagrees.

The Tenth Circuit has established that, "[u]nder 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council must  consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations and quotations omitted).  "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Id.* (citation omitted).

Here, the new evidence presented by Plaintiff would not qualify as it does not relate back to the period prior to the ALJ's decision.  Neither report "purport[s] to retroactively diagnose a condition existing in the period preceding the ALJ's decision, much less does it indicate any impaired functioning relating back to that period." *Krauser v. Astrue*, 638 F.3d 1324, 1329 (10th Cir. 2011).  In fact, the March, 2012 MRI appears to have been taken in relation to an accident Plaintiff had on February 20, 2012 where Plaintiff "was pulling some [wood] in a cart up an incline when he slipped on the ice twisting his back and landing on his right knee" which purportedly caused "significant worsening" of his pre-existing back issues.  (Tr. 308.)  If Plaintiff believed that this new injury caused him to become disabled subsequent to the ALJ's decision of June 28, 2011, he was required to file a new claim.  20 C.F.R. § 404.603.  As to Plaintiff's November, 2011 X-rays, these similarly do not purport to have any retroactive application to Plaintiff's conditions as they existed on June 28, 2011, the time that the ALJ issued his decision.  And despite Plaintiff's invitation, the Court declines the opportunity to

determine what degree of degeneration must have begun during the period predating the ALJ's decision with no medical basis for doing so.  To the extent that Plaintiff's condition worsened subsequent to the ALJ's decision, this would do nothing to show that Plaintiff was disabled at the time the ALJ made his decision.

## IV.     CONCLUSION

Based on the foregoing, the Court AFFIRMS the Commissioner's denial of supplemental security income benefits and disability insurance benefits.  The Clerk of the Court is directed to enter JUDGMENT in Defendant's favor.  The hearing on this matter set for September 9, 2015 (ECF No. 22) is VACATED.

Dated this 26th day of August, 2015

BY THE COURT:

RAYMOND P. MOORE
United States District Judge